IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ROBERT D. KAETZEL, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 24-204-BAH |
| THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Robert D. Kaetzel ("Kaetzel" or "Plaintiff"), proceeding pro se, brought suit against the Secretary of Housing and Urban Development ("HUD" or "Defendant") challenging HUD's implementation of its Good Neighbor Next Door ("GNND") Program (the "Program"). ECF 1.[1] Defendant filed a motion to dismiss. ECF 12 (motion); ECF 14 (amended memorandum in support). Plaintiff opposed that motion, ECF 15, and Defendant replied, ECF 17. Plaintiff also filed a motion for summary judgment, ECF 16, to which Defendant requested the Court stay its response deadline pending resolution of the motion to dismiss, *see* ECF 17, at 1 n.1. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's motion to dismiss is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED AS MOOT**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I. BACKGROUND

### A. Regulatory Background of the Good Neighbor Next Door Program

HUD created the GNND Program "to improve the quality of life in distressed urban communities . . . by encouraging law enforcement officers, teachers, and firefighters/emergency medical technicians to purchase and live in homes that are located in the same communities where they perform their daily responsibilities and duties."[2] 24 C.F.R. § 291.500. The Program allows eligible purchasers to "purchase a specifically designated HUD-acquired home located in a HUD-designated revitalization area" "[a]t a 50 percent discount from the list price" and "[w]ith a downpayment of $100, but only if the [eligible purchaser] finances the home through a Federal Housing Administration (FHA) insured mortgage." § 291.510(a)(1)–(2).

Potential purchasers must meet certain criteria enumerated in the Program's regulations. *See* § 291.515 (listing purchaser qualifications); § 291.520 (listing law enforcement criteria); § 291.525 (listing teacher criteria); § 291.530 (listing firefighter/emergency medical technician criteria). As relevant here, a firefighter seeking to qualify under the GNND Program must be "[e]mployed full-time as a firefighter . . . by a fire department or emergency medical services responder unit of the Federal Government, a State, unit of general local government, or an Indian tribal government" and "in the normal course of [their employment], directly serve the locality where the home is located." § 291.530. The Program defines "locality" as "the community, neighborhood, or jurisdiction of the unit of general local government, or Indian tribal government" and "unit of general local government" as "a county or parish, city, town, township, or other political subdivision of a State." § 291.505. "In the event that several bids are received on a single

---

[2] The Program regulations were promulgated pursuant to the National Housing Act, 12 U.S.C. § 1701 et seq., and 42 U.S.C. §§ 1441 (Congressional declaration of national housing policy), 1441a (National housing goals), 1551a, and 3535(d) (relating to the Secretary's ability to delegate and to make rules and regulations). *See* 24 C.F.R. Part 291; *see also* 71 Fed. Reg. 64426 (Nov. 1, 2006).

2

property, HUD will randomly select a winning offer by lottery . . . ." § 291.510(c). Potential purchasers are required to submit bids through a real estate broker, § 291.510(d), but "[i]n no event will HUD pay a buyer's closing costs on the purchase of a property or a selling broker's commission through the GNND Sales Program." § 291.545(c).

### B. Factual Background

Plaintiff is "a Maryland licensed real estate broker." ECF 1, at 4. Plaintiff's central contention is that he disputes how GNND program administrators interpret "locality" and "unit of general local government." *See id.* at 4–5. Two of his clients, Kendra L. Slydell ("Slydell") and Melvin Kenneth Hudson ("Hudson"), both full-time firefighters, sought to purchase properties from HUD through the GNND Program. *Id.* at 4. Plaintiff alleges that Raine & Company, LLC, HUD's contractor, denied Slydell the opportunity to purchase 6705 Calmos Street Capitol Heights, MD 20743 (the "Capitol Heights property") and similarly denied Hudson the opportunity to purchase 3703 6th Street Baltimore, MD 21225 in Baltimore City (the "Baltimore City property") after HUD determined that each of their experiences as a Prince George's County and Baltimore City firefighter, respectively, "d[id] not qualify [each of them] as a purchaser for the [Capitol Heights and Baltimore City properties] in contradiction to the established and published rules for the [GNND] program." *Id.*

According to Plaintiff, "Defendant continues with negligent regard to deny otherwise qualified purchasers the opportunity to purchase a home through [GNND] in contradiction to the rules for the [Program]." *Id.* "Defendant appears to be making individual case by case determinations (internal rules and policies) about employment qualifications and are creating additional requirements for purchasers that do not exist within the rules for the 'Good Neighbor Next Door Program[,]'" including the "additional requirement[] ... that the individual

3

purchaser[s'] regular work locations are not within the same 'neighborhood or community' as the property, [and] therefore [the purchasers] do not qualify." *Id.*

Plaintiff alleges that "[t]hese actions have significantly harmed Plaintiff and Plaintiff's business, whose clients purchase homes offered for sale through the Defendant's 'Good Neighbor Next Door Program.'" *Id.* "Defendant's decisions appear to be nonstandard, arbitrary and without the specific knowledge needed to be able to make a proper decision with regard to purchaser qualification in accordance with the written rules for the [GNND] sales program. These actions have seriously harmed and continue to harm Plaintiff and Plaintiff's purchaser clients." *Id.* at 5.

While Plaintiff refers to specific amounts in lost commission for both the Capitol Heights and Baltimore City properties, he "requests injunctive relief from the Court to enjoin [HUD] from taking actions that may prohibit otherwise qualified person(s) from purchasing a home under the [GNND Program]."[3] *Id.* at 6. He further requests that the Court "make a determination" that Slydell and Hudson are each "qualified purchaser[s] with regard to [their respective] employment" for the Capitol Heights and Baltimore City properties and that the Court "immediately order the Defendant to not sell or transfer the" Capitol Heights and Baltimore City properties. *Id.* He also "requests the Court order Defendant to immediately cease making additional requirements with regard to employment 'work location' qualifications for the [GNND Program] that are not included in the Code of Federal Regulations[.]" *Id.*

---

[3] Plaintiff clarified in his opposition to the motion to dismiss that he does not seek damages, only injunctive relief. *See* 15, at 12 ("The Plaintiff is seeking injunctive relief from the Court and not compensatory damages.").

4

## II.  LEGAL STANDARD

Defendant has moved to dismiss the complaint pursuant to Fed. Rs. Civ. P. 12(b)(1) (for lack of subject matter jurisdiction) and 12(b)(6) (for failure to state a claim).[4] *See* ECF 12 (motion); ECF 14 (amended memorandum in support). Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Federal courts are courts of limited jurisdiction, and the plaintiff seeking to invoke federal jurisdiction bears the burden of demonstrating that this Court has the authority to hear the case. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014). Moreover, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court." *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004).

---

[4] Attached to the motion to dismiss is a GNND Firefighter/Emergency Medical Technician Pre-Qualification Questionnaire. ECF 12-2. On a motion to dismiss, the Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). While the Court would be permitted to consider the questionnaire as integral here, the motion to dismiss can be resolved without reference to the questionnaire, so the Court will not consider it.

In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

In considering a motion under Rule 12(b)(6), courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

Because Plaintiff brings this suit pro se, the Court must liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the

plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

## III. ANALYSIS

As a threshold matter, because Plaintiff clarified that he does not seek compensatory relief, *see* ECF 15, at 12, the Court will not address Defendant's arguments that the Court does not have subject matter jurisdiction over such claims and that Plaintiff lacks standing to pursue such claims. *See* ECF 14, at 8–13. As relevant here, Defendant argues that Plaintiff does not have standing to bring a claim for injunctive relief because the future harm he alleges that he faces is not sufficiently real or imminent. *Id.* at 13–14. Defendant also argues that to the extent Plaintiff seeks relief under the Administrative Procedure Act ("APA") that claim must fail because Plaintiff challenges HUD's implementation of its own regulations and an APA claim must be based on an organic statute. *Id.* at 14–15. Defendant also argues that Plaintiff, as a real estate broker, cannot state an APA claim because he does not fall within the "zone of interests" of any relevant statute, and he has not alleged that HUD failed to take a discrete required action. *Id.* at 15–18.

In opposition, Plaintiff argues that he has standing because "as a licensed broker participating in HUD programs with the explicit authorization of HUD, Kaetzel is directly impacted by HUD's administration of the GNND Program." ECF 15, at 11. He further asserts that "[t]he financial harm and potential reputational damage Kaetzel suffered and will likely continue to suffer are directly traceable to HUD's refusal to follow the letter of the CFR" and that "there is a clear and causal link between HUD's [alleged refusal to adhere to the GNND regulations] and Kaetzel's economic injuries" sufficient to confer standing. *Id.* at 11–12. Plaintiff

7

also asserts that he falls within the "zone of interests" of the GNND Program because "[a]s a licensed real estate broker facilitating sales under the GNND Program with the approval of HUD, [his] interests are aligned with ensuring the program operates within its legal framework, which includes protecting the ability of qualified purchasers to buy homes and allowing Kaetzel to engage in business activities authorized by the CFR." *Id.* at 14. In reply, Defendant reiterates its position that Plaintiff lacks standing, ECF 17, at 2–4, and that Plaintiff's APA claim must be dismissed for failure to state a claim, *id.* at 4–5

The Court begins with the question of whether Plaintiff has Article III standing to bring this suit because whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "The standing doctrine . . . depends not upon the merits, but on 'whether the plaintiff is the proper party to bring [the] suit.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005) (first citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975), then quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992). The Supreme Court's "standing doctrine . . . requir[es] plaintiffs to 'alleg[e] such a personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf.'" *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38 (1976)). "To establish Article III standing, an injury must be [1] 'concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3]

redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

"When a plaintiff seeks declaratory or injunctive relief, the court must determine whether the injury is accompanied by 'any continuing, present adverse effects.'" *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 361 (E.D.N.C. 2024) (quoting *Lujan*, 504 U.S. at 564). "[A] plaintiff's past injury does not necessarily confer standing upon him to enjoin the possibility of future injuries." *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *see also Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 681 (4th Cir. 2020) (explaining that "past [harms can be] evidence[ of] a non-speculative threat of future injury"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) (explaining that injunctive relief "cannot conceivably remedy any past wrong but is aimed at deterring [a defendant] from violating [the relevant law] in the future"). As to the imminence of an alleged injury, the Supreme Court has explained:

> Although "imminence" is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is "*certainly* impending[.]" It has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control. In such circumstances we have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.

*Lujan*, 504 U.S. at 564 n.2 (citations omitted) (additional internal quotation marks omitted).

The Supreme Court has recognized specific instances "where government regulation of a third-party individual or business may be likely to cause injury in fact to an unregulated plaintiff."

9

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 384–85 (2024) (citations omitted) (collecting cases where "the regulation (or lack thereof) may cause downstream or upstream economic injuries to others in the chain, such as certain manufacturers, retailers, suppliers, competitors, or customers"). In such circumstances, "to establish causation, the plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." *Id.* at 385.

"To satisfy standing's causation requirement, the alleged injury must be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (alterations in original) (quoting *Lujan,* 504 U.S. at 560). A plaintiff must show a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The causal connection must not be excessively attenuated. *Id.* at 560–61. Causation and imminence, then, often overlap:

> In cases of alleged future injuries to unregulated parties from government regulation, the causation requirement and the imminence element of the injury in fact requirement can overlap. Both target the same issue: Is it likely that the government's regulation or lack of regulation of someone else will cause a concrete and particularized injury in fact to the unregulated plaintiff?

*All. for Hippocratic Med.*, 602 U.S. at 385 n.2. As to redressability, "[t]he burden imposed by this requirement is not onerous. Plaintiffs 'need not show that a favorable decision will relieve [their] every injury.' Rather, plaintiffs 'need only show that they personally would benefit in a tangible way from the court's intervention.'" *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)).

10

Relevant here is *Miller v. Montgomery County*, where a lumberjack had contracted with a landowner to harvest timber located on the landowner's property. 458 F. App'x 304, 305 (4th Cir. 2011). The landowner, with the help of the lumberjack, applied for an exemption from a county forest conservation law. *Id.* at 306. When the exemption application was denied (therefore precluding the lumberjack's harvesting of the lumber), the lumberjack brought suit against the county alleging violations of the constitutions of both the State of Maryland and United States, as well as common law tort claims. *Id.* at 307. "Notably, [the landowner] did not join [the lumberjack's] lawsuit and [was] not a party in th[e] case." *Id.* The Fourth Circuit ultimately affirmed the district court's finding that the lumberjack had not suffered an injury-in-fact sufficient establish standing because his alleged injury (the loss of the lumber harvesting contract) was too attenuated from the allegedly wrongful action (the denial of the application). *Id.* at 308.

Whether Plaintiff has Article III standing here is an admittedly close call. Plaintiff is undoubtedly more involved in the GNND applications of his clients than the lumberjack was in the exemption application in *Miller* as the Program requires potential purchasers to submit bids through a real estate broker, 24 C.F.R. § 291.510(d). On the other hand, Plaintiff, as the real estate broker, is not the direct object of the GNND Program or any decisions made pursuant to it, and Plaintiff's clients are not parties to this suit. Plaintiff's theory of standing regarding future injury rests on the following series of events: (1) Plaintiff's future clients will seek to purchase a HUD-owned property through the GNND Program; (2) their bid will be selected in the lottery; (3) HUD will determine that Plaintiff's clients are not, in fact, eligible purchasers after accepting the bid based on allegedly impermissible additional criteria (4) such that Plaintiff cannot earn a commission (to be paid by his client, not HUD) on the transaction. While this may be the series of events that led to the lost commission on Slydell's and Hudson's bids and provide some

11

evidence in support of the position that future injury is not speculative, *see Outdoor Amusement*, 983 F.3d at 681, the Court is not convinced it is enough to establish that a future injury is imminent. At each of the steps in the series of events, an independent decision by a third-party not before this Court, or the sheer chance outcome of a lottery, could sever the causal chain between the alleged injury—the loss of commission—and HUD's allegedly unlawful conduct. The chain of events is too attenuated and is not sufficiently predictable to establish imminence for injury-in-fact or causation. *See Clapper*, 568 U.S. at 411 (explaining that even if plaintiffs "could demonstrate injury in fact, . . . speculation [in the chain of contingencies flowing form the alleged violation to the alleged injury] shows that respondents cannot satisfy the requirement that any injury in fact must be fairly traceable to" the challenged statute); *All. for Hippocratic Med.*, 602 U.S. at 385 (noting that the chain of events must be *predictable* to establish standing); *Lujan*, 504 U.S. at 567 (finding it "pure speculation and fantasy[] to say that anyone who observes or works with an endangered species, anywhere in the world, is appreciably harmed by a single project affecting some portion of that species with which he has no more specific connection" and concluding wildlife conservationist plaintiffs did not have standing to challenge a Department of the Interior regulation promulgated pursuant to the Endangered Species Act).

Even if the Court were to find that Plaintiff's potential future lost commissions were sufficiently imminent, traceable to Defendant's conduct, and redressable by court action to establish Article III standing, Plaintiff still cannot bring the claim he seeks based on the principles of what has historically been described as "prudential standing." *See Kowalski v. Tesmer*, 543 U.S. 125, 129 n.2 (2004) (assuming without deciding that criminal defense attorney plaintiffs had Article III standing but nevertheless holding that they did not have standing to bring claims on behalf of indigent clients who were denied appellate counsel). Prudential standing "encompass[es]

. . . at least three broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004)); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984).

In *Lexmark*, the Supreme Court recently suggested that "prudential standing" is an inapt term for these doctrines:

> The zone-of-interests test is not the only concept that we have previously classified as an aspect of "prudential standing" but for which, upon closer inspection, we have found that label inapt. Take, for example, our reluctance to entertain generalized grievances—*i.e.,* suits "claiming only harm to [the plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan,* 504 U.S. at 573–74. While we have at times grounded our reluctance to entertain such suits in the "counsels of prudence" (albeit counsels "close [ly] relat[ed] to the policies reflected in" Article III), *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475 (1982), we have since held that such suits do not present constitutional "cases" or "controversies." *See, e.g., Lance v. Coffman,* 549 U.S. 437, 439 (2007) (*per curiam*); *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 344–346 (2006); *Lujan,* 504 U.S. at 573–574. They are barred for constitutional reasons, not "prudential" ones. The limitations on third-party standing are harder to classify; we have observed that third-party standing is "'closely related to the question whether a person in the litigant's position will have a right of action on the claim,'" *Department of Labor v. Triplett,* 494 U.S. 715, 721 n. * * (1990) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 n.12 (1975)), but most of our cases have not framed the inquiry in that way. *See, e.g., Kowalski,* 543 U.S. at 128–129 (suggesting it is an element of "prudential standing"). This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day.

572 U.S. at 127 n.3. Regardless of what this body of law is called, it is clear that its application to the case at bar counsels dismissal. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Sec'y*

13

*of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (alteration in *Munson*) (quoting *Warth*, 422 U.S. at 499). "In order to maintain third-party standing, a plaintiff must establish the following three requirements: (1) an injury-in-fact; (2) a close relationship between the plaintiff and the person whose right is being asserted; and (3) a hindrance to the third party's ability to protect his or her own interests." *Miller*, 458 F. App'x at 310 (citing *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002) and *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991)).

Here, Plaintiff's claims are entirely derivative of those of his clients, who are not parties in this suit. Even assuming Plaintiff has met the first two criteria, there is nothing before the Court to suggest that Plaintiff's clients are unable to bring suit on their own behalf challenging HUD's application of its own GNND Program regulations. Plaintiff therefore cannot establish third-party standing. *See MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 746 (7th Cir. 2007) (Posner, J.) (relying on third-party and prudential standing cases to find that real estate brokers did not have standing to challenge an ordinance that would reduce the salability of houses because "they have no rights in commissions they may someday earn on sales of property with whose owners they have as yet no brokerage contract").

Further, Plaintiff has not established that he falls within the zone of interests of any relevant statute. "The interest [Plaintiff] asserts must be 'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Plaintiff does not point to any statute Defendant has purportedly violated, only the GNND Program itself, which in and of itself may be fatal to Plaintiff's complaint. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory

text created, but it may not create a right that Congress has not."). But even if the Court were to consider the housing statutes pursuant to which the Program rules were promulgated, Plaintiff, as a real estate broker, does not fall within the zone of interests of those statutes. *See* 12 U.S.C. § 1701 et seq. (National Housing Act); 42 U.S.C. §§ 1441 (Congressional declaration of national housing policy), 1441a (National housing goals). While Plaintiff asserts that he falls within the zone of interests because his interests are aligned with those of his clients, the existence of the zone of interests and third-party standing doctrines alone suggests that aligned interests are not sufficient to establish that a plaintiff falls within the zone of interests of a particular statute. Plaintiff has not established that he falls within the zone of interests of any relevant statute. Because Plaintiff does not have standing to bring this suit, it must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF 12 (with the amended memorandum in support at ECF 14), is GRANTED. Plaintiff's motion for summary judgment, ECF 16, is DENIED AS MOOT. A separate implementing Order will issue.

Dated: February 24, 2025

/s/
Brendan A. Hurson
United States District Judge